Filed 6/12/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ESTHER KIM, Plaintiff, Cross-defendant, and Respondent, v. KONAD USA DISTRIBUTION, INC. et al., Defendants, Cross-complainants, and Appellants. | G048443 (Super. Ct. No. 30-2011-00489871) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregory Munoz, Judge.  Affirmed.

Henry M. Lee and Michelle P. Tran for Defendants and Appellants.

Lee & Fields and Edward Y. Lee for Plaintiff and Respondent.

\*          \*          \*

Following a bench trial, the court awarded plaintiff Esther Kim $60,000 against her former employer, defendant Konad USA Distribution, Inc. (Konad), and her former boss, defendant Dong Whang. Defendants appeal, citing the alleged failure of plaintiff to meet certain "jurisdictional" prerequisites (e.g., exhaustion of administrative remedies, proving Konad had five employees) in her sexual harassment and wrongful termination claims. We affirm the judgment.

FACTS

*Factual Background*[1]

Plaintiff "started working for Konad in 2006 as an account manager. Her main duties were to process orders by phone and emails. Konad's business involved the distribution and sales of nail art kits. . . . Mr. and Mrs. Whang were actively involved in the operation of the business. Dong Whang was the CEO and sole shareholder. . . . [T]he business grossed about two million dollars in 2012."

"In 2007 Plaintiff moved to La Habra to be closer to her job. . . . [I]t was about this time that Dong Whang commenced a pattern of sexually harassing Plaintiff. . . . [O]ver the next several years, Defendant Whang would regularly make comments to Plaintiff concerning sexual matters. He questioned Plaintiff about her sexual activities with her boyfriend, whether she used sex toys, and whether she did

---

[1] The court found the testimony of plaintiff to be "very credible" and the testimony of defendant Whang to be "not credible at all." "The trial court's statement of decision sets forth the relevant facts, and [for the most part, defendants do] not challenge on appeal the trial court's findings of the underlying facts. Accordingly, we quote from the trial court's statement of decision at length . . . ." (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 761.) One exception is the following fact found by the court: "During the four years that Plaintiff worked for Konad there were usually four other people that worked there, excluding the owner, Dong Whang, and his wife." We separately discuss below whether there is substantial evidence supporting this finding of fact.

Kegel exercises.  He would comment on other women's breasts and buttocks and would tell Plaintiff that hers were better.  He also related stories about a friend that would have sex with women and then go home and have sex with his wife.  On one occasion he suggested that Plaintiff sit on his lap, which offer Plaintiff declined.  Whang asked her if she thought that Whang was trying to get her to go to bed with him.  She responded that he was disgusting.  At work their desks were across from each other and he would leer at her almost on a daily basis and stare at her breasts and legs.  He related stories of monks and their small penises allegedly due to lack of use.  There were other unsolicited sex-laden utterances that occurred daily and eventually evolved into unwanted touching of Plaintiff's body by Whang."

"Whang got into the habit of hugging Plaintiff and patting her on the buttocks.  On a return motor trip from Las Vegas with only the two of them present, he placed his hand on her thigh.  He came to her new apartment in La Habra with dinner and a bottle of vodka.  Upon leaving the apartment he hugged Plaintiff for a bit longer than usual.  At a trade show in Chicago he followed her to her room to allegedly retrieve some medication that had inadvertently been placed in an office bag that Plaintiff maintained.  Upon leaving he gave her a very long hug which caused Plaintiff to start crying."

"Plaintiff finally found the hostile environment so stressful that she wrote to Whang on November 12, 2010, that she would not be returning to work.  Plaintiff claims that Whang had fired her by telling her to 'take her last paycheck and go and make a lot of love with her boyfriend.'  Plaintiff was single, in her early twenties during this period of time and was quite attractive.  On the other hand, Whang was pushing sixty and fairly plain-looking.  Plaintiff testified that Whang volunteered to pay $500.00 a month for one year to help pay for Plaintiff's apartment rent.  Whang asked that Plaintiff not tell his wife about these payments."

Cathy "Lim worked at Konad for about fifteen months.  [Lim] remained there for another three months after Plaintiff left. . . .  Whang often talked [to Lim] about

Plaintiff and sex in the same breath. He told Lim that he thought that Plaintiff's boyfriend was using her mainly for sex. He referred to Plaintiff as a slut. It was clear to Lim that Whang was obsessed with Plaintiff and Lim warned her to be careful with Whang, especially when they were alone. Plaintiff related to Lim many of the incidents described above."

*Procedural History*

In July 2011, plaintiff filed a civil action against Konad and Whang. Plaintiff's complaint included four causes of action relevant to this appeal: (1) sexual harassment (quid pro quo); (2) sexual harassment (hostile work environment); (3) retaliation; and (4) wrongful termination in violation of public policy. The first three causes of action were pleaded under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). The fourth cause of action was not pleaded as a FEHA claim, but rather as a common law tort.

The complaint alleged, "Plaintiff filed timely complaints against the Defendants with the [Department of Fair Employment and Housing (DFEH)] alleging sexual harassment and failure to prevent sexual harassment. Thereafter, Plaintiff received from the DFEH notification of her right to sue in the Courts of the State of California, the Defendants against which complaints had been filed." The complaint did not plead exhaustion of administrative remedies with regard to the FEHA retaliation cause of action.

Defendants answered the complaint in December 2011.[2] The answer included an affirmative defense that plaintiff had failed to exhaust her administrative

_____

[2] Defendants also filed a cross-complaint against plaintiff, which was subjected to several rounds of demurrers. Ultimately, the judgment awarded $7,500 to defendants and against plaintiff for breach of contract, as pleaded in the third amended cross-complaint. Thus, the judgment provides for a net recovery of $52,500 in favor of plaintiff, rather than $60,000.

4

remedies as required by Government Code section 12960. Defendants did not demur to the complaint, file a motion for summary judgment, or file any other pretrial motion to dispose of any of plaintiff's causes of action.

Trial commenced in February 2013. Defense counsel's opening statement focused on the merits of the contentions at issue. Defense counsel did not claim plaintiff had failed to exhaust her administrative remedies under FEHA or that the court lacked jurisdiction to decide the causes of action pleaded in the complaint for any other reason. The record does not disclose the existence of any motions filed or argued during the trial by defendants to dismiss plaintiff's FEHA claims based on a failure to exhaust administrative remedies or an insufficient number of employees. Defense counsel's closing argument did not mention jurisdictional issues or the exhaustion of administrative remedies.

At the close of plaintiff's case-in-chief, defendants moved for judgment pursuant to Code of Civil Procedure section 631.8. This motion was based on an alleged lack of evidence sufficient to support the substantive elements of plaintiff's causes of action. There was no mention of a lack of jurisdiction, a lack of exhaustion of administrative remedies, or a failure to prove Konad had five employees in the argument pertaining to this oral motion. The court granted the motion as to the third cause of action (retaliation pursuant to FEHA), but denied the motion as to the other three relevant causes of action (sexual harassment – quid pro quo, sexual harassment – hostile work environment, and wrongful termination in violation of public policy).

The only time the issue of exhaustion of administrative remedies was raised at trial was during the testimony of plaintiff. Defense counsel asked plaintiff whether she had filed a document with a government agency alleging sexual harassment; plaintiff replied, "No." Defense counsel then led plaintiff to admit she had not produced "any document that was a complaint . . . alleging sexual harassment that [she] filed with any government agency . . . ." On redirect, plaintiff's counsel succeeded (over defendants'

5

objection that the document was not produced in discovery) in introducing exhibit 19, a January 24, 2011 "Notice of Case Closure" addressed to plaintiff from DFEH. Plaintiff's counsel explained that he anticipated "there might be an objection or a defense based on failure to exhaust administrative remedies. This is just the right to sue notice that was obtained prior to filing this lawsuit." Plaintiff testified she was aware her attorney had filed an administrative complaint for her.

The notice from DFEH (exhibit 19), which referenced a matter number and a case name (ESTHER/WHANG, DONG, AS AN INDIVIDUAL) states in relevant part: "This letter informs that the above-referenced complaint that was filed with the [DFEH] has been closed effective January 24, 2011 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint. [¶] This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the [FEHA] against the person, employer, labor organization, or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter." The second page of the document included the following notation at the bottom of the page: "WHANG DONG [¶] SUPERVISOR [¶] KONAD USA DISTRIBUTION, INC. [¶] 7300 ARTESIA BLVD [¶] BUENA PARK, CA 90621." Defense counsel pointed out that the document did not indicate the nature of the claim or claims.

After the close of evidence and argument, the court took the case under submission on February 20, 2013. The court issued a proposed statement of decision and judgment on February 27. Defendants objected to the statement of decision, including on the grounds that the court lacked jurisdiction because of the number of Konad's employees and plaintiff's alleged failure to exhaust administrative remedies.

6

The court filed an essentially unchanged statement of decision and judgment on March 15, 2013. The statement of decision indicated plaintiff carried her burden of proof with regard to all three remaining causes of action. The judgment awarded plaintiff $60,000; the award is in a single lump sum and is not differentiated by cause of action, defendant, or type of damage.

On March 19, 2013, defendants filed "supplemental" objections to the statement of decision, further exploring their contention that the court lacked jurisdiction because plaintiff did not prove she had exhausted her administrative remedies under FEHA by filing administrative complaints naming both defendants and raising the claims relied on in this litigation.

On April 17, 2013, defendants moved to set aside and vacate the judgment as void pursuant to Code of Civil Procedure section 473, subdivision (d), based on their various jurisdictional arguments (i.e., failure to exhaust administrative remedies, failure to prove filing of adequate administrative complaints, failure to prove five employees worked at Konad during the relevant time period).

Plaintiff opposed the motion on several grounds, including waiver by defendants. Plaintiff also appended copies of documents showing she had in fact complied with jurisdictional prerequisites, including verified administrative complaints separately filed in January 2011 against both Konad and Whang. The allegations in these administrative complaints included termination, harassment, constructive discharge, retaliation, and failure to prevent harassment. This conduct was alleged to have occurred because of plaintiff's sex and marital status. Plaintiff specifically wrote that "the reasons for my discrimination were based upon my sex as a female. I suffered sexual discrimination and harassment and retaliation. In addition, I was constructively terminated because of my sex." These form documents indicated that the submission of the complaints constituted a declaration under penalty of perjury that the facts attested to were true. Also appended to the opposition was a notice of case closure and right-to-sue

7

notice specifically addressing the administrative complaint against Konad, to match the letter specifically referencing Whang introduced at trial as exhibit 19. Plaintiff's counsel obtained these documents by making a public records request with DFEH.

In their reply memorandum, defendants claimed it would be improper for the court to consider the documents appended to plaintiff's opposition to the motion because these documents were not admitted at trial, they were insufficiently authenticated, and there was no evidence the administrative complaints were "verified."

The court denied the motion to set aside the judgment. The court rejected the notion that a FEHA complaint must be introduced into evidence to provide the court with jurisdiction to rule in a FEHA case. The court also noted that the introduction of exhibit 19 (the right to sue letter) was evidence of exhaustion.

DISCUSSION

On appeal, defendants contend the court lacked "jurisdiction" to enter judgment as it did on the FEHA sexual harassment causes of action because plaintiff failed to prove exhaustion of administrative remedies. As to the common law wrongful termination cause of action, defendant claims (1) there was no evidence Konad had five or more employees, and (2) Whang was not plaintiff's employer.

*FEHA Exhaustion of Administrative Remedies*

"FEHA creates an administrative agency, the DFEH, whose task it is to receive, investigate and conciliate complaints of unlawful employment discrimination [citations]." (*Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1613 (*Okoli*).) "Any person claiming to be aggrieved by an alleged unlawful practice may file with the department a verified complaint, in writing, that shall state the name and address of the person, employer, labor organization, or employment agency alleged

8

to have committed the unlawful practice complained of, and that shall set forth the particulars thereof and contain other information as may be required by the department." (Gov. Code, § 12960, subd. (b).) "If, following receipt of a complaint, the DFEH fails to resolve the case or to file an accusation against the employer within 150 days, it must notify the employee in writing of his or her right to file a civil action under the FEHA. [Citation.] This notification is commonly referred to as a 'right to sue' letter." (*Okoli*, at p. 1613; see Gov. Code, § 12965, subd. (b).) As happened here, the employee can also request and obtain an immediate right-to-sue letter by filing an online administrative complaint, waiving a DFEH investigation. (Cal. Code Regs., tit. 2, § 10005.) The administrative complaint need not be signed if it is filed electronically for purposes of obtaining an immediate right-to-sue letter; by submitting the complaint, the complainant is verifying its truth (to the best of her knowledge) under penalty of perjury. (*Id*., subd. (d)(9).)

"Before filing a civil action alleging FEHA violations, an employee must exhaust his or her administrative remedies with DFEH." (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 153.) Exhaustion includes the timely filing of administrative complaints addressing the claims and parties at issue, as well as the procurement of right-to-sue letters. (See *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492.) Courts have referred to this requirement as a "'jurisdictional prerequisite.'" (See, e.g., *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70 ["Exhaustion of *administrative* remedies is 'a jurisdictional prerequisite to resort to the courts'"]; *Okoli*, *supra*, 36 Cal.App.4th at p. 1613 ["in the context of the FEHA, exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts"].)

Moreover, it is "plaintiff's burden to plead and prove timely exhaustion of administrative remedies, such as filing a sufficient complaint with [DFEH] and obtaining a right-to-sue letter." (*Garcia v. Los Banos Unified School Dist.* (E.D.Cal. 2006) 418 F.Supp.2d 1194, 1215, citing *Westinghouse Elec. Corp. v. County of Los Angeles* (1974)

9

42 Cal.App.3d 32, 37 [taxpayer administrative exhaustion case]; see also Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2013) ¶ 16:253 [" [P]laintiffs bear the burden of pleading and proving timely filing of a sufficient complaint with the DFEH and obtaining a right-to-sue letter"].)

The preceding black letter law is uncontroversial as far as it goes. What is less clear is what should happen if the issue of exhaustion of administrative remedies is basically ignored until after FEHA claims have been submitted to the factfinder for decision. Common sense dictates that most failure-to-exhaust issues do not involve triable questions of fact and will therefore be resolved by dispositive motions prior to trial. (See, e.g., *Medix Ambulance Service, Inc. v. Superior Court* (2002) 97 Cal.App.4th 109, 118 [demurrer sustained as to defendants not named in DFEH administrative complaints]; *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1723-1725 [grant of summary judgment affirmed based in part on failure to include claims in DFEH administrative complaint that were ultimately asserted in lawsuit].)[3] As explained in the procedural history above, however, defendants took the road less travelled and waited until after the case was submitted for decision to raise their contentions about exhaustion of administrative remedies.

---

[3] Indeed, the CACI jury instructions make no mention of a plaintiff's obligation to prove exhaustion of administrative remedies as an element of a FEHA cause of action. (See, e.g., CACI Nos. 2500, 2505, 2520.) CACI No. 2508 identifies one circumstance in which the exhaustion requirements present a triable issue of fact. It applies when "[*Name of defendant*] contends that [*name of plaintiff*]'*s* lawsuit may not proceed because [*name of plaintiff*] did not timely file a complaint with" DFEH. CACI No. 2508 should be given "if the plaintiff relies on the continuing-violation doctrine in order to avoid the bar of the limitation period of one year within which to file an administrative complaint." (Judicial Council of Cal., Civ. Jury Instns. (2014) Directions for Use for CACI No. 2508, p. 1377.) CACI No. 2508 is agnostic as to which party has the burden of proof with regard to showing that the complaint was or was not filed on time with DFEH in the context of a continuing-violation assertion.

10

In their briefs, defendants misleadingly claim plaintiff "failed to exhaust her administrative remedies." By our review of the record, the only reasonable inference is that plaintiff did exhaust her administrative remedies. She submitted verified complaints to DFEH, naming both defendants and covering the claims asserted in the lawsuit. As explained above, it does not matter that these documents were unsigned. (Cal. Code Regs., tit. 2, § 10005, subd. (d)(9).) Plaintiff received right-to-sue letters referencing her administrative complaints. Defendants simply ignore these documents in their appellate briefs. Defendants do not attempt to argue the government records submitted by plaintiff were inadmissible under the Evidence Code. Instead, defendants' argument (implicitly at least) is that we are obligated to limit our review to evidence admitted at trial, thereby ignoring the fact that plaintiff really did exhaust her administrative remedies.

In other words, defendants posit that because plaintiff supposedly failed to establish proof of the "jurisdictional" prerequisite of exhaustion during trial (by introducing evidence that verified administrative complaints were filed with DFEH against both defendants with all claims raised in the lawsuit specified in those administrative complaints), the trial court lacked fundamental subject matter jurisdiction and the ensuing judgment was void. Defendant's argument hinges on the theory that by referring to exhaustion as a "jurisdictional prerequisite," courts have intended to classify exhaustion as necessary to trial courts having subject matter jurisdiction. The importance of this supposition is that "[t]he adequacy of the court's subject matter jurisdiction" can be raised at any time (even on appeal) and is not subject to forfeiture or waiver. (*Keiffer v. Bechtel Corp.* (1998) 65 Cal.App.4th 893, 896 (*Keiffer*).)

But "jurisdictional prerequisite" does not mean subject matter jurisdiction in the context of exhaustion of administrative remedies. "'The concept of jurisdiction embraces a large number of ideas of similar character, some fundamental to the nature of any judicial system, some derived from the requirement of due process, some determined

11

by the constitutional or statutory structure of a particular court, and some based upon mere procedural rules originally devised for convenience and efficiency, and by precedent made mandatory and jurisdictional.'" (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 134.) "Although earlier cases tended to view the exhaustion doctrine as invalidating a court's subject matter jurisdiction, thus allowing a defendant to raise it at any time [citations], later cases have generally . . . conclude[d] a defendant waives the defense by failing to timely assert it." (*Id.* at p. 135.) "[T]he administrative exhaustion requirement does not implicate the court's subject matter jurisdiction. It is 'jurisdictional' in the sense only that a court's failure to apply the rule is judicial error and can be corrected by issuance of a writ of prohibition." (Chin et al., Cal. Practice Guide: Employment Litigation, *supra*, ¶ 16:252; see *Mokler*, *supra*, 157 Cal.App.4th at p. 136; *Keiffer*, *supra*, 65 Cal.App.4th at pp. 896-899.)

If a defendant timely presents the issue of whether a FEHA plaintiff has properly presented all claims to the DFEH, a court must decide the merits of this question. (*Keiffer*, *supra*, 65 Cal.App.4th at p. 900.) But "'it would be grossly unfair to allow a defendant to ignore this potential procedural defense at a time when facts and memories were fresh and put a plaintiff to the time and expense of a full trial, knowing it could assert the failure to exhaust administrative remedies if it received an adverse [judgment].'" (*Ibid.*; see also *Mokler*, *supra*, 157 Cal.App.4th at p. 136 [defendant waived exhaustion defense by "waiting to raise exhaustion until after a full trial on the merits"].)

We therefore disagree with defendants' underlying premise that exhaustion of administrative remedies affects the fundamental subject matter jurisdiction of the court. Prior to submission of the case for decision, defendants did not request dismissal of the FEHA causes of action based on plaintiff's failure to exhaust.[4] Defendants thereby

---

[4] We disagree that defendants adequately raised this issue by briefly questioning plaintiff about her submission of documents to DFEH, objecting to the

12

forfeited any right they may have had (in the abstract) for a judgment of dismissal on the FEHA causes of action. We note that had defendants moved for a defense verdict before submission of the case for decision, plaintiff could have moved to reopen her case to present the evidence she submitted with her postjudgment briefing, which established plaintiff had exhausted her administrative remedies. (See *Grant v. Comp USA, Inc.* (2003) 109 Cal.App.4th 637, 641 [following nonsuit motion, employee allowed to reopen case to prove existence of right-to-sue letter].)

Moreover, even if Government Code section 12965, subdivision (b),[5] "does define subject matter or fundamental jurisdiction" by reference to whether a claim was filed at all with DFEH (*Keiffer*, *supra*, 65 Cal.App.4th at p. 899), we would not reverse the judgment.[6] This is not a typical "waiver" case in which the plaintiff failed to exhaust administrative remedies but the defendant forfeited the issue by failing to raise it with the trial court in a timely fashion. Plaintiff actually exhausted her administrative remedies, as described above. Defendants seek to have it both ways by claiming they can raise exhaustion at any time but the evidence of exhaustion should be limited to that submitted at trial. If it truly is a question of subject matter jurisdiction, the trial court could — and this court can — reasonably rely on the materials submitted by plaintiff in her opposition to defendants' posttrial motion to decide the issue. By arguing otherwise, defendants conflate the question of whether sufficient evidence was admitted at trial to find in

admission of exhibit 19 on the grounds that it was not produced in discovery, and stating in the course of this exchange that exhibit 19 did not adequately show exhaustion.

[5] With regard to actions authorized pursuant to right-to-sue letters, "[t]he superior courts of the State of California shall have jurisdiction of those actions, and the aggrieved person may file in these courts." (Gov. Code, § 12965, subd. (b).)

[6] There was some evidence of exhaustion, namely the right-to-sue letter introduced as exhibit 19. We assume without deciding that exhibit 19 was insufficient to prove exhaustion with regard to all parties and claims.

13

plaintiff's favor on the elements of her FEHA claims with the question of whether subject matter jurisdiction existed at trial and now exists on appeal.  (Cf. *Great Western Casinos, Inc. v. Morongo Band of Mission Indians* (1999) 74 Cal.App.4th 1407, 1418 ["if subject matter jurisdiction may be challenged at any time during the course of an action it is logical for the court to consider all admissible evidence then before it in making its determination — whatever the procedural posture of the case"].)  There is clear evidence in the record that plaintiff timely submitted verified administrative complaints against both defendants on all the claims pursued at trial and received right-to-sue letters for both defendants.  For this reason, we would affirm the judgment even if we were to conclude that exhaustion of administrative remedies is a necessary precondition to the exercise of subject matter jurisdiction by California courts in FEHA cases.

*Proof of Five Employees as Prerequisite to Wrongful Termination Claim*

Next, defendants claim the court erred by finding them liable for wrongful termination in violation of public policy, the fourth cause of action in the complaint.  This cause of action alleges plaintiff "was harassed based on her sex.  Defendants failed to take proper action to protect Plaintiff.  Defendants' harassment created an intolerable working environment and he terminated Plaintiff after she refused to acquiesce to his advances.  Plaintiff also complained regarding the harassment and was terminated.  Plaintiff's wrongful termination from her employment was based upon Defendants' violation of the Public Policy of the State of California as set forth in the Fair Employment Housing Act, the California Constitution, and other statutes and provisions."

Although the fourth cause of action references FEHA as one source of the public policy at issue, this is not a statutory FEHA cause of action.  FEHA does not displace or supplant common law tort claims for wrongful discharge.  (See *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885; *Rojo v. Kliger* (1990) 52 Cal.3d 65, 70-71.)

14

Nonetheless, defendants argue that because only employers with more than five employees are subject to FEHA (which defendants identify as the sole policy basis for plaintiff's claim), it was not against public policy for Konad to terminate plaintiff. "[T]he FEHA . . . limits the application of the act's enforcement provisions to employers of five or more persons. Thus, while the Legislature has made a broad statement of policy, it has not extended that policy to small employers." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 130; see Gov. Code, § 12926, subd. (d) ["'Employer' includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly"].) For instance, there can be no common law tort action for wrongful termination based on age discrimination against an employer with less than five employees. (*Jennings v. Marralle*, *supra*, 8 Cal.4th at pp. 124-125.) Defendants argue the same rule should apply to a wrongful termination in violation of public policy claim based on the sexual harassment of plaintiff.[7]

There are two problems with defendants' argument. First, plaintiff's claim is based on sexual harassment rather than age discrimination. Government Code section 12940, subdivision (j)(1), prohibits harassment of employees because of their sex or

---

[7] Of course, defendants' argument can only work if Konad employed less than five employees. In its statement of decision, the court found that "[d]uring the four years that Plaintiff worked for Konad there were usually four other people that worked there, excluding the owner, Dong Whang, and his wife." It appears from our review of the record that Konad had only *four* employees, including plaintiff but excluding Mr. and Mrs. Whang. Defendants contend the relevant statutory definition excludes Mr. and Mrs. Whang from the tally. (See Gov. Code, § 12926, subd. (c) ["'Employee' does not include any individual employed by his or her parents, spouse, or child, or any individual employed under a special license in a nonprofit sheltered workshop or rehabilitation facility"]; Cal. Code Regs., tit. 2, § 11008, subd. (b)(2).) But a regulation not cited by either party suggests that Mrs. Whang counts even if Mr. Whang is the employer. (See Cal. Code Regs., tit. 2, § 11008, subd. (a)(2) ["For purposes of 'counting' the (five or more) employees, the individuals employed need not be employees as defined below; nor must any of them be full-time employees"].) One might also think that Mr. Whang himself could count; as he emphasizes below, Konad was the employer (not Whang). We need not resolve this question, though, as we can affirm on another ground.

gender. "For purposes of this subdivision only, 'employer' means any person regularly employing one or more persons or regularly receiving the services of one or more persons providing services pursuant to a contract, or any person acting as an agent of an employer . . . . The definition of 'employer' in subdivision (d) of Section 12926 applies to all provisions of this section other than this subdivision." (Gov. Code, § 12940, subd. (j)(4)(A).) Thus, *all* employers (not just those with five or more employees) accused of harassment (based on sex or some other classification listed in Gov. Code, § 12940, subd. (j)(1)) are subject to a FEHA harassment claim. Likewise, because plaintiff's common law claim is based on sexual harassment, the applicable FEHA public policy applies to employers with less than five employees.[8]

Second, plaintiff's common law wrongful discharge claim was based on both FEHA and the California Constitution. In *Rojo v. Kliger*, *supra*, 52 Cal.3d 65, plaintiffs alleged sexual harassment by their employer ultimately resulting in tortious discharges in violation of public policy. (*Id*. at p. 71; *id*. at p. 89 [plaintiffs' "refusal to tolerate that harassment or acquiesce in those demands resulted in the wrongful discharge of [one plaintiff] and the constructive wrongful discharge of" the other plaintiff].) The defendant employed fewer than five persons and was subject only to the sexual harassment provisions of FEHA. (*Id*. at p. 73, fn. 4.) Among other things, our Supreme Court held that "sex discrimination in employment may support a claim of tortious discharge in contravention of public policy." (*Id*. at pp. 70-71.) Such a cause of action exists because article I, section 8 of the California Constitution "unquestionably reflects a fundamental *public policy* against discrimination in employment — public or private —

---

[8] Arguably, plaintiff's common law claim was based on the FEHA policy against retaliation (Gov. Code, § 12940, subd. (h)) rather than or in addition to the FEHA policy against sexual harassment. This raises potentially tricky questions with regard to the five-employee limitation. We need not address this concern, however. As set forth in the next paragraph, case law supports plaintiff's cause of action even if FEHA cannot provide the predicate public policy.

16

on account of sex." (*Rojo*, at p. 90.) "[S]exual harassment . . . is merely one form of sex discrimination [citation]." (*Ibid.*) Thus, even though it had fewer than five employees, "defendant's discharges of plaintiffs on the grounds alleged contravened a fundamental, substantial public policy embodied in the state Constitution . . . ." (*Ibid.*) In sum, a wrongful termination against public policy common law tort based on sexual harassment can be brought against an employer of any size.

*Whang's Individual Liability for Wrongful Termination*

Finally, Whang contends he should not be held liable for wrongful termination because Konad (not Whang) was plaintiff's employer. An action for wrongful termination in violation of public policy "can only be asserted against *an employer*. An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; rather, he or she can only be the agent by which *an employer* commits that tort." (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900.) This particular tort "is premised on the wrongful termination of an employment relationship. If an employer terminates an employment relationship for a reason that contravenes some fundamental public policy, then the employer breaches a general duty imposed by law upon all employers and the employee's remedy therefore sounds in tort." "[T]he breach of the employment relationship is an indispensable element of the tort, because it serves factually as the instrument of injury. Thus, there can be no [wrongful termination in violation of public policy] cause of action without the prior existence of an employment relationship between the parties." (*Ibid.*) Although Whang's position as owner and chief executive officer of Konad is very different than the supervisors in the *Miklosy* case, we are bound to apply this clear rule established by our Supreme Court.

17

Plaintiff fails to respond to Whang's argument; her brief merely points out that an individual may be held liable for harassment under FEHA. Of course, Whang is not challenging his liability on the harassment causes of action, only the wrongful termination in violation of public policy cause of action.

We affirm the judgment, however. For one, it is unclear whether this issue was ever raised with the trial court in a timely fashion. Even assuming it was, "[i]t is the appellant's burden to affirmatively demonstrate reversible error." (*California Pines Property Owners Assn. v. Pedotti* (2012) 206 Cal.App.4th 384, 392.) "'No form of civil trial error justifies reversal and retrial, with its attendant expense and possible loss of witnesses, where in light of the entire record, there was no actual prejudice to the appealing party.' [Citation.] Accordingly, errors in civil trials require that we examine 'each individual case to determine whether prejudice actually occurred in light of the entire record.'" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801-802.) Defendants' opening brief includes only half of one page addressing the contention that the court committed error by finding Whang liable for wrongful termination in violation of public policy. In this cursory treatment of the issue, Whang does not explain how any error on this point was prejudicial. The court found both defendants liable on all three causes of action. The statement of decision does not divide damages between each of the causes of action or explain the basis for the award of damages. The judgment merely awards an undifferentiated $60,000 to plaintiff against defendants. Essentially, it appears the court found the same general damages to be appropriate for both defendants and all three causes of action. Whang makes no effort to argue he would have been responsible for a lesser amount had the court not found him liable on the wrongful termination cause of action.

DISPOSITION

The judgment is affirmed. Plaintiff Esther Kim shall recover costs incurred on appeal.

IKOLA, J.

WE CONCUR:


FYBEL, ACTING P. J.


THOMPSON, J.