Filed 8/28/24  Tate v. Central Unified School District CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| KIMBERLY TATE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CENTRAL UNIFIED SCHOOL DISTRICT,<br><br>    Defendant and Respondent. | F086429<br><br>(Super. Ct. No. 19CECG03497)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

Law Office of Kevin G. Little and Kevin G. Little for Plaintiff and Appellant.

Law Office of Paul Auchard and Paul Auchard for Defendant and Respondent.

-ooOoo-

Appellant Kimberly Tate appeals after the trial court ruled that her California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) claim could not proceed under a mental health disability discrimination theory because appellant failed to exhaust her administrative remedies under this theory.  What makes this case unique is the procedural context in which this ruling was made.  The trial court reached its determination that the claim was barred in the context of resolving an in limine motion

shortly before trial that sought to exclude documents related to appellant's exhaustion efforts that had not been produced in discovery. Appellant contends the trial court could not and should not have concluded the theory was barred. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case centers around the submissions appellant made to the Department of Fair Employment and Housing [1] (Department) and the court's authority to act in the manner contested. For context, however, appellant was hired to work as a special education psychologist for Central Unified School District (Central Unified) in May 2016. She was classified as a probationary employee and thus was dependent upon having her employment contract renewed to retain employment. At some point around March 2018, appellant was informed that her contract would not be renewed and her employment would end in June 2018. Appellant contends the renewal did not occur because of various forms of discrimination she suffered, and she eventually filed an administrative complaint and then a lawsuit over her treatment.

Appellant's Administrative Complaint

Initially proceeding on her own behalf, appellant signed a complaint form prepared by the Department. The complaint stated appellant experienced discrimination on or before February 21, 2018, because of her "Sex/Gender," and that she was terminated as a result. The "PARTICULARS" section stated: "I was subjected to discrimination (terminated) due to my sex/gender (female). From on or about May 2016 through December 2017, during my probationary period, I received standard ratings on my evaluations. On or about February 21, 2018, I received my final probationary evaluation with standard rating however I was not recommended for permanent status

---

[1] On June 30, 2022, the Department of Fair Employment and Housing was renamed the Civil Rights Department. (Sen. Bill No. 189 (2021–2022 Reg. Sess.); Stats. 2022, ch. 48, § 30.)

and I was 'not a good fit' despite having no write ups.  Other female employees did not pass probation as well; however, a male coworker received permanent status despite receiving several complaints regarding his work performance."  On September 25, 2018, appellant received her right-to-sue letter based on this complaint.

This complaint form is, apparently, all that was produced in discovery.  However, in advance of trial, appellant included a more substantial set of documents related to communications with the Department as a proposed trial exhibit.  Included within the proposed trial exhibit were:  a substantially more detailed description of appellant's employment issues, which had purportedly been provided to the Department in advance of the complaint; a purported amendment to the right-to-sue letter filed by appellant's counsel that included another detailed summary of the facts underlying her claim; and evidence that technical issues at the Department prevented them from modifying the case file as counsel requested.

The Timeline Evidence

Looking first at the detailed description of appellant's employment issues, appellant attempted to introduce a timeline like accounting of her experiences.  The document stated that between roughly October 2015 and April 2016, appellant was recruited to apply for a position with Central Unified and was verbally offered and accepted that position.  Appellant's hiring contact and supervisor throughout was Andrea Valadez.  Appellant resigned from her then current position but became concerned when she had not signed her new employment contract within the first two weeks.  At this point, appellant called a friend who allegedly told her Valadez had asked the mutual friend, "You know that funk that [appellant] was in before, do you think she's ok now?"

Shortly thereafter, appellant was told she would have a final interview with one Jack Kelejian on May 17, 2016.  Appellant was confused, thinking she had already been hired, but was told it was just a formality.  At the meeting, however, appellant alleged the interview was more like an interrogation and that Kelejian told her, "I'll let you know if

3.

you're hired." Two days later, appellant signed her new employment contract. Appellant alleged Valadez stated appellant was " 'her hire' and if it wasn't for her, I would not have received this position."

Later that same month, appellant contended Valadez and Maisie Young accused appellant of improperly enrolling her daughter in Central Unified schools. Appellant was told to submit additional paperwork. Appellant found the accusations improper in part because the "phone call was irrelevant to my job performance and therefore, my supervisor should not have been called regarding this matter." Appellant noted she and Young "had a disagreement regarding my daughter's school placement prior to my employment" and alleged that this conversation "introduced the conspiracy to cause me harm by devising a plan to terminate me after the two[-]year probationary status was up."

Appellant detailed several issues that arose during her tenure. She was falsely accused of losing her assigned technology devices in October 2016. The devices were located within a Central Unified classroom in early 2017. Appellant contended she never received an apology regarding the accusations she lost the technology and her evaluations were never corrected to state the items had not been lost.

During the 2016 to 2017 school year, appellant alleged Valadez began selling "Lip Sense" products to her subordinates and appellant initially purchased some "[o]ut of fear of retaliation or losing my job if I didn't support her side business." Appellant contended her relationship with Valadez improved when she was purchasing, but when she ceased making purchases because she believed the conduct to be improper, "her change in behavior went back to treating me indifferently and negatively by not returning my business calls, texts, or e[-]mails." (Italics omitted.)

In April or May of 2017, appellant learned of another woman who had trouble working with Valadez and eventually resigned. Appellant alleged she learned that Valadez "does not like women at all" and heard of an incident where Valadez berated

4.

another employee because that employee was wearing the same perfume as Valadez's mother, whom she allegedly hates.

Appellant then alleged that in February 2018, she was informed her contract would not be renewed and given the excuse she was not a good fit. Appellant alleged she provided proof she was well-liked, that she had no write ups, and that she had been promised longevity, but the decision did not change. Appellant contended she became physically ill from the stress of the event and was placed on stress leave for the remainder of the school year. Appellant claimed another employee harassed her repeatedly when appellant submitted her doctor note.

Upon leaving Central Unified, appellant obtained a different job. She contended, however, that her new employer was a friend of Valadez and that, after learning appellant had worked for Valadez, her new supervisor changed from being friendly to overburdening her and complaining about her work. Appellant allegedly had another medical flare-up and was functionally terminated shortly thereafter.

In a section titled "In conclusion" (boldface omitted), appellant wrote: "I feel I was terminated due to my gender …. Of the other two woman [*sic*] that were terminated before, were blacklisted. I believe that is why I was terminated from [her final job]." Appellant further alleged Valadez had only complained about women and that she was "a victim due to fraudulent recruiting," false promises, and "[m]ost importantly[,] being discriminated, terminated due to my sex (gender)." Appellant then recounted the oddities of her hiring process and the lack of formal polices adopted by Central Unified, before detailing the physical ailments she suffered as a result of the alleged abuse she suffered. These ailments were all physical, and appellant alleged she was eventually diagnosed as having "an auto-immune disease known as colitis." Appellant also stated she began receiving counseling in November 2017.

Finally, in a section detailing people with relevant information, appellant identified a potential witness with information about "a [m]ale employee that was hired and tenured with [Central Unified] in spite of several complaints regarding his work performance."

The Amendment and Technical Difficulties Claim

As noted above, appellant received her right-to-sue letter on September 25, 2018. She filed her lawsuit in this case on September 25, 2019, one year later. On September 3, 2019, appellant's counsel sent an "Amended Right To Sue" to the Department utilizing a form that had been revised as of July 2019. Using a check-the-box format, the amended right-to-sue form alleged appellant had experienced discrimination and harassment "because of my actual or perceived" (capitalization & boldface omitted) age (40 and over), color, disability (physical or mental), family care or medical leave (California Family Rights Act of 1993; Gov. Code, § 1945.2) (employers of 50 or more people), medical condition (cancer or genetic characteristic), race, sex/gender, and other (hostile work environment). Appellant also alleged she experienced retaliation because she participated as a witness in a discrimination or harassment complaint, reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, and requested or used leave under the California Family Rights Act or Family Medical Leave Act (29 U.S.C. § 2601 et seq.) (employers of 50 or more people).

The form also contained a narrative recitation of the reasons for the alleged discrimination, harassment, or retaliation, which stated:

"Prior to her being hired, her daughter attended Liddell Middle School which is in the Central Unified School District. [Appellant], a single mom, had recently lost her father and was going through a difficult time. [Appellant] suffered from mental health issues and on multiple occasions was unable to get her daughter to school on time. Maisie Young, (Intervention Specialist at CUSD) attempted to remove her daughter from the school for excessive tardiness. [Appellant] confided to her that she had depression. In June of 2016, after working under the supervision of Ms. Valadez for one month,

6.

[appellant] received a call from [Valadez] while on the speaker phone with Ms. Young. Ms. Young accused [appellant] of lying and circumventing procedures to have her daughter enrolled at CUSD. She also asked [appellant] if she had 'gotten over her mental issues'. [Appellant] began to experience discrimination, harassment, disparate treatment and retaliation from that point on.

"Despite timely direct communication to Ms. Valadez regarding the discriminatory conduct as well as complaints made to [human resources], nothing was done. In fact, Ms. Valadez furthered the harassment by accusing [appellant] of stealing her own computer and selling it. Her electronic devises [*sic*] went missing in October 2016 and she called [appellant] 'a f\*\*\*ing idiot'. The computer was later found in January, 2017."

An e-mail chain connected with the amended right-to-sue letter shows that appellant's counsel asked the Department to update the original file but that some unknown technical complications prevented that request. The chain ended with an internal note among appellant's counsel's staff suggesting the Department would be willing to sign a declaration that the attempt to amend was timely.

<u>Motion in Limine, Arguments, and Ruling</u>

According to Central Unified, the first time it heard about the timeline evidence and purported amendment of the right-to-sue letter was at a settlement conference a couple of weeks before the trial. Accordingly, in motions in limine filed on May 19, 2023, Central Unified included a motion asserting, "The claim of disability discrimination should be excluded since it is outside the scope of the [Department] complaint." (Boldface & some capitalization omitted.) In initial briefing, Central Unified argued appellant's complaint only alleged sex and gender discrimination and thus could not pursue a disability discrimination claim. Central Unified requested that "any evidence of alleged disability discrimination should be excluded."

In a document titled "Further Brief on Motion In Limine No. 7 Regarding [Department] Complaint and Statute of Limitations" (boldface & some capitalization

7.

omitted), Central Unified provided additional argument. Central Unified noted that the purported amendment was filed "more than one year after the latest possible accrual date of the cause of action," Central Unified had previously requested all relevant documents on this topic in discovery but had been told there were none to produce other than the original complaint form, and the challenged documents were first provided to counsel by e-mail on May 18, 2023. Central Unified then argued that the failure to produce the documents was a sufficient ground to exclude them from trial and that any alleged amendment could not relate back to the original complaint because it "does not claim or make reference to disability discrimination." Central Unified similarly filed objections to appellant's exhibit containing the amended right-to-sue filing on the ground the "exhibits have not been provided to [Central Unified] in discovery or otherwise."

Appellant filed a written response to the in limine motion, arguing Department regulations "clearly seek an amendment of a right to sue if it is either timely (before the right to sue expires) and/or relates back to a timely claim of discrimination" and that appellant's amendment "related back to the timely filed complaint." Appellant further argued there was no prejudice to the lack of production in part because the case had always been filed under the disability discrimination theory.

At the hearing on the in limine motions, appellant conceded she had not produced the timeline of events or the requested amendment during discovery. Appellant argued, however, that the documents showed her amendment was proper because it related back to the timeline of events submitted to the Department during the initial complaint proceedings. Central Unified conceded that if the amendment was timely and related back, the issues would be properly raised, but argued that was not the case—even accepting that the disputed timeline was validly submitted to the Department—in part because the timeline evidence also failed to raise a disability discrimination claim. Central Unified further noted that they could not verify the document had been submitted because the Department had destroyed the original file. As the argument progressed,

8.

appellant conceded that if the timeline evidence did not disclose a disability discrimination claim, the purported amended right-to-sue letter would not be timely.

In the course of the argument, the court concluded that the issue could be dispositive and took a recess to further review the issue. When the discussion resumed, the court expressed its view that if the contested documents had not been produced, they would have to be excluded, thus limiting the court's analysis. Appellant responded that a dispositive order entered in response to a discovery issue would be too severe of a remedy given the issue had been raised in the complaint, discovery and depositions had been taken with the issue disclosed, and the documents would still need to be considered in a jurisdictional analysis regardless of whether they were excluded from the trial.

The trial court then ruled as follows: "The Court, having carefully considered the briefing, the cases, that which was submitted to the [Department], and I'll refer to the two-page August 14th, 2018, claim, as well as counsel, Mr. Little's attempt to amend the complaint over a year later, the Court finds under the [G]overnment [C]ode that the administrative remedy was not exhausted, the claim was not made, and therefore it is barred in this instance, that is the claim of mental health disability discrimination. The Court will grant that motion and exclude the claim as it is time-barred."

In light of this ruling, appellant dismissed the remaining portion of her case and this appeal timely followed.

## DISCUSSION

Appellant challenges the court's ruling in two primary ways. First, appellant contends that disputed jurisdictional facts should have precluded any order dismissing appellant's disability discrimination theory. Second, appellant contends the court could not find a lack of jurisdiction merely because Central Unified did not receive the entire Department file during discovery.

For its part, Central Unified defends the court's ruling on four grounds. First, that the trial court properly excluded evidence of disability discrimination because the

9.

original complaint only alleged gender discrimination.  Second, that the attempt to add such a claim was late and did not relate back to the original complaint.  Third, that the court properly excluded evidence not produced in discovery.  And fourth, that the disability discrimination should have been excluded since it was not set forth in any of the timely filings with the Department.

The parties' arguments circle around a critical issue in this case.  Under what procedural mechanism did the trial court act?  The court's action was purportedly predicated on a motion in limine.  In response, however, both sides referenced evidence—both produced and unproduced in discovery—that each said supported its interpretation of a document that would not be excluded by the in limine motion.  And, in response to this, the court reviewed much of that evidence and made a ruling that the evidence submitted did not show a certain claim had been made to the Department and thus could not demonstrate exhaustion of appellant's administrative remedies.  Sorting out the procedural basis for the court's ruling is thus key to determining whether the court erred.

### *Standard of Review and Applicable Law*

" 'Before filing a civil action alleging [California Fair Employment and Housing Act] violations, an employee must exhaust his or her administrative remedies with [the Department].' [Citation.]  Exhaustion includes the timely filing of administrative complaints addressing the claims and parties at issue, as well as the procurement of right-to-sue letters." (*Kim v. Konad USA Distribution, Inc.* (2014) 226 Cal.App.4th 1336, 1345.)  This requirement is considered jurisdictional and it is at all times the plaintiff's burden to plead and prove timely exhaustion of administrative remedies.  (*Ibid.*)  Notably, however, exhaustion does not implicate a court's fundamental subject matter jurisdiction and thus can be forfeited if not timely raised before the trial court.  (*Keiffer v. Bechtel Corp.* (1998) 65 Cal.App.4th 893, 899–901.)

In practice, exhaustion issues are generally raised either through a demurrer or through a motion for summary judgment. (See *Blum v. Superior Court* (2006) 141 Cal.App.4th 418, 421 [reviewing demurrer grant]; *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 154 [reviewing summary judgment grant].) In the context of a demurrer, the trial court can and will often take judicial notice of the Department's files when considering legal arguments regarding the scope of exhaustion in the pleadings. (See *Medix Ambulance Service, Inc. v. Superior Court* (2022) 97 Cal.App.4th 109, 113, 118 [noting prior request for judicial notice of initial complaint and relying upon that document in resolving demurrer].) And in the context of a summary judgment motion, the court will review the evidence submitted for any material issue of fact and then determine whether a party is entitled to judgment as a matter of law. (*Kaur v. Foster Poultry Farms LLC* (2022) 83 Cal.App.5th 320, 337.)

Motions in limine "are designed to facilitate management of a case by deciding difficult evidentiary issues in advance of trial. [Citations.] Although trial courts may exercise their inherent powers to permit other uses of motions in limine [citation], when used in such fashion they become substitutes for dispositive statutory motions." (*McMillin Companies, LLC v. American Safety Indemnity Co.* (2015) 233 Cal.App.4th 518, 529.) Courts have reviewed in limine motions as substitutes for dispositive statutory motions many times, including as substitutes for demurrers, summary judgment motions, and nonsuits. (*Id.* at pp. 529–530 [viewing in limine rulings as summary adjudication and motion for nonsuit]; *Edwards v. Centrex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 28 [viewing in limine motion as tantamount to a nonsuit]; *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*(2009) 171 Cal.App.4th 939, 951–952 [viewing in limine motion as demurrer or nonsuit].)

A motion for nonsuit is made " 'at the outset of trial with reference to evidence already produced in discovery' " and " 'concedes the truth of the facts proved, but denies as a matter of law that they sustain the plaintiff's case.' " (*K.C. Multimedia, Inc. v. Bank*

11.

*of America Technology & Operations, Inc., supra*, 171 Cal.App.4th at p. 952.)  "A motion for nonsuit or demurrer to the evidence concedes the truth of the facts proved, but denies as a matter of law that they sustain the plaintiff's case.  A trial court may grant a nonsuit only when, disregarding conflicting evidence, viewing the record in the light most favorable to the plaintiff and indulging in every legitimate inference which may be drawn from the evidence, it determines there is *no* substantial evidence to support a judgment in the plaintiff's favor."  (*Edwards v. Centrex Real Estate Corp., supra*, 53 Cal.App.4th at pp. 27–28.)

"Like many evidentiary rulings, orders on motions in limine are generally reviewed for abuse of discretion."  (*McMillin Companies, LLC v. American Safety Indemnity Co., supra*, 233 Cal.App.4th at p. 529.)  However, when used as a substitute for a dispositive motion, the standard of review is generally consistent with that motion.  (See *id.* at pp. 529–530.)  Where a motion in limine eliminates an entire cause of action or defense, " ' "we treat it as a demurrer to the evidence and review the motion de novo." ' "  (*People v. Superior Court (Cal Cartage Transportation Express, LLC)* (2020) 57 Cal.App.5th 619, 628.)

### The Trial Court's Ruling Was Tantamount to a Nonsuit

The trial court's ruling in this case is difficult to cabin into an existing procedural box.  The motion filed was generally a broad one, attacking the entirety of one of appellant's theories of liability and suggesting a demurrer or nonsuit.  In supplemental briefing and argument, however, additional discovery-related issues were raised while, at the same time, arguments were made suggesting the claim failed regardless of the proffered evidence.  No argument, however, focused on the specific allegations in the complaint, suggesting a pure demurrer was not intended.[2]

---

[2]  Notably, neither party submitted the actual complaint as part of the record in this case, further indicating that a demurrer was not intended or contemplated.

When the trial court ruled on the motion, it noted it was considering "that which was submitted to the [Department]" and identified both the complaint, which was produced, and the attempt to amend, which was not produced. Although it did not specifically discuss the timeline evidence, its reference to nonproduced evidence shows it was not treating the decision as one predicated on an initial ruling that such evidence had been excluded. Reviewing the evidence, the court concluded that a claim for mental health disability discrimination "was not made, and therefore it is barred" for failure to exhaust administrative remedies. In this way, the trial court's ruling accepted all evidence, both produced and proffered, and determined as a matter of law that appellant could not state a claim. Upon review of the record, this court finds this to be equivalent to a nonsuit and shall review according to those standards.

Normally a nonsuit cannot be made prior to opening statements. (Code Civ. Proc., § 581c, subd. (a) ["Only after, and not before, the plaintiff has completed his or her opening statement, or after the presentation of his or her evidence in a trial by jury, the defendant, without waiving his or her right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit."].) However, the well-settled inherent authority of a court to treat motions in limine as substitutes for dispositive motions as to various claims, means "the perfunctory nature of the proceedings does not warrant reversal if the record shows that plaintiff could not have prevailed under any circumstances." (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1595 [nonsuit prior to opening arguments not prejudicial]; but see *Urshan v. Musicians' Credit Union* (2004) 120 Cal.App.4th 758, 767 [due to the express, mandatory statutory language, trial courts do not have authority to shorten the minimum notice period for summary judgment hearings].) While this court agrees with the general principle that using in limine motions in this manner is disfavored and should be avoided, the law remains that such actions are within the trial court's legitimate discretion. (See *Amtower*, at pp. 1588, 1595 [publishing to "express our concerns surrounding the proliferation of

13.

such shortcut procedures" but noting that in "spite of the obvious drawbacks to the use of in limine motions to dispose of a claim, trial courts do have the inherent power to use them in this way"]; *R&B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 333 [cautioning against the wholesale disposition of a case through rulings on motions in limine].)

## *Appellant Failed to Preserve A Mental Health Disability Discrimination Claim*

The question thus turns to whether the trial court's ruling was erroneous. Appellant contends in her main argument that if her "amended complaint of discrimination submitted in September 2019 related back to [her] original [Department] complaint submitted in September 2018, then her mental health [disability] discrimination claim was timely." Appellant contends this is so because submissions to the Department are generally meant to be liberally construed, and all that is required is that the claims in a lawsuit are like and reasonably related to those in the administrative complaint and any amendments relating back to the original complaint are supported by factual allegations made in the first instance.

Under the statutory scheme applicable to appellant at the time, to be timely raised, an administrative complaint must be filed with the Department within a year of the alleged employment discrimination. (See *Foroudi v. The Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1003, discussing Gov. Code, former § 12960, subd. (d); Stats. 2005, ch. 642, § 1, p. 5050.) After the Department closes a case, claimants can continue to request amendments. "The [D]epartment shall amend closed employment discrimination complaints as requested by complainants or their counsel." (Cal. Code Regs., tit. 2, § 10022, subd. (d).) "When the [D]epartment amends a closed complaint, the [D]epartment shall neither reopen the complaint nor make an administrative determination on the validity, retroactivity, or merits of the amendment." (Cal. Code Regs., tit. 2, § 10022, subd. (e).) Retroactivity, or relating back an amendment, is possible, "but only if the factual allegations in the original [Department] complaint are

14.

'able to bear the weight of the new theory added by amendment.' " (*Foroudi v. The Aerospace Corp., supra*, 57 Cal.App.5th at pp. 1003–1004.)

Here appellant's September 2019 amendment, coming well more than a year after the alleged discrimination, was untimely unless the facts contained in the original complaint can bear the weight of a mental health disability discrimination claim. Even considering the timeline evidence submitted by appellant, the facts here simply cannot bear the weight of such a change. The only evidence cited by appellant in support of retroactivity is a note that someone asked if appellant was still in the "funk" she had been in previously. However, this statement came before appellant was ever hired by Central Unified, and there is no indication in the record that such a concern was ever raised again. Upon review, as the trial court noted, the submissions to the Department relate to the actual final wording of the original complaint in that they focus on a sex or gender discrimination claim. As there is no evidence in the record of a timely submission to the Department that can bear the weight of a mental health disability discrimination claim, appellant cannot show the trial court erred in granting the equivalent of a nonsuit through the motion in limine.

Nor do appellant's claims of evidentiary issues reinvigorate her claim. As noted, appellant always bears the burden of pleading and proving exhaustion. (*Kim v. Konad USA Distribution, Inc., supra*, 226 Cal.App.4th at p. 1345.) Appellant failed to produce any evidence in discovery demonstrating a mental health disability claim could relate back to the original complaint and right-to-sue letter. Then, on the eve of trial, appellant provided additional documents allegedly supporting such a claim in a proposed trial exhibit. When this late disclosure brought the exhaustion issue before the court, all of the relevant documents had been submitted for review, and appellant was provided an opportunity to disclose any other bases for the retroactivity claim. No other documents or relevant arguments were disclosed. The court then had before it all the same documents it would have on a demurrer. Further, as neither party had preserved the

15.

original file submitted to the Department, the court could not take judicial notice of additional submissions, and appellant's failure to preserve her own evidence is not a basis to conclude additional evidence supports her burden of proof. (See *Victor Valley Union High School Dist. v. Superior Court* (2023) 91 Cal.App.5th 1121, 1139, 1144, fn. 12 [noting evidence must be preserved by party with access once litigation is probable].) Accordingly, to the extent appellant contends the record was thin at this time, there remains no basis to find an error by the trial court.

## DISPOSITION

The judgment is affirmed. Costs are awarded to Central Unified.

HILL, P. J.

WE CONCUR:

POOCHIGIAN, J.

FRANSON, J.