Filed 4/13/22  Mayfaire Homeowners Assn. v. Deol CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MAYFAIRE HOMEOWNERS ASSOCIATION,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SIMRANJIT DEOL,<br><br>    Defendant and Appellant. | F080655<br><br>(Super. Ct. No. BCV-18-102299)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

It is hereby ordered that the opinion filed herein on April 7, 2022, be modified as follows:

1. On page 23, the last sentence of the first full paragraph should be replaced with the following sentence:

    "All this to say that the ADR notice requirements in sections 5930 and 5935, taken together with section 5950, refer to requisite material allegations that must be included in the complaint, not an affirmative defense."

Except for the modification set forth, the opinion previously filed remains unchanged.

This modification does not effect a change in the judgment.

SMITH, J.

WE CONCUR:

LEVY, Acting P.J.

MEEHAN, J

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MAYFAIRE HOMEOWNERS ASSOCIATION,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SIMRANJIT DEOL,<br><br>Defendant and Appellant. | F080655<br><br>(Super. Ct. No. BCV-18-102299)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  David R. Lampe, Judge.

LeBeau-Thelen and Andrew K. Sheffield, for Defendant and Appellant.

Pamela Abbott Moore and Nicholas J. Wolfsen, for Plaintiff and Respondent.

-ooOoo-

This case was brought by the homeowners' association for the Mayfaire residential community in Bakersfield against an individual homeowner, Simranjit Deol. The homeowners' association (Mayfaire) was governed by a board of directors (Board). Deol's house within the Mayfaire community burned down on account of arson. A dispute arose between Mayfaire's Board and Deol over Deol's alleged failure to maintain and landscape his lot, or timely rebuild his home, in the years following the fire. Mayfaire filed the instant action to enforce the community's governing declaration of covenants, conditions, and restrictions (CC&Rs). The matter eventually proceeded to a bench trial, in which Mayfaire prevailed. The trial court granted injunctive and declaratory relief to Mayfaire. The court ordered Deol to "complete the construction of the residence so that all external indicia of construction is concluded, and all publicly visible portions of the property are properly landscaped and maintained, within 90 days of the date of entry of judgment." Deol appealed. His principal claim on appeal is that Mayfaire failed to prove at trial that it had complied with statutory prerequisites to filing a lawsuit to enforce the CC&Rs and was therefore not entitled to any relief. We agree and reverse the judgement.

## FACTS

**Plaintiff Mayfaire's Case**

### (1)    Testimony of Susan Bryan, Property Manager for Mayfaire

Mayfaire called two witnesses at trial. Mayfaire's first witness was Susan Bryan. From May 2013 to August 2018, Bryan was employed by Lordon Management as a "[c]ommunity manager," and provided property management services for Mayfaire during that period, under Lordon's contract with Mayfaire. Bryan got to know Deol when she began managing Mayfaire, as Deol was on Mayfaire's Board.

Bryan described the Mayfaire community: "It's high-end homes on a larger scale. The yards are, you know, well kept, you know, to the point where no oil stains on the driveways. You can't have your garage doors open. There is a lot of rules that go along

2.

with this community. It's a very well kept, very nice neighborhood." Bryan also described her obligations as property manager: "The same as any other property, you know, doing onsite inspections, checking, you know, the common areas, the individual properties, making sure everybody is complying with the rules, you know, coordinating with vendors, sending out communications to the ownership."

In March 2015, Deol's house in the Mayfaire community burned down. The house was burned to rubble; only the garage was left standing. Starting April 2015, about a month after the fire, Bryan talked to Deol periodically about his intentions as to what he was going to do with his property. Deol indicated as early as April 2015 that he wanted to rebuild and was trying to obtain the original plans for his model of house; he asked Bryan to help him locate the plans. The lot was a mess and Mayfaire's Board was getting concerned about the situation.

By March 2016, reconstruction of Deol's house had not begun, nor had plans for the house been submitted to the Board. In March 2016, the Board voted to remove Deol as a Mayfaire director. He was removed for the following reasons: "His … very sporadic appearances at board meetings, and also his failure to comply with the maintenance of his property."

In April 2016, the Board fined Deol because his property was in bad condition. The letter sent to Deol about the fine did not identify a specific violation of any part of Mayfaire's governing CC&Rs.[1] The Board also wanted Bryan to hire someone to clean up the lot; she contacted Grass Masters for a bid. The authority for doing this was based on the CC&Rs specifically Article 8.2. Grass Masters was not ultimately hired because Deol remedied the lack of maintenance on his lot. Deol also emailed Bryan to say "he [would] bring the property into compliance and also submit his plans to rebuild."

---

[1] All communications to Deol were sent to his Mayfaire property address on Tungsten Street.

3.

Bryan communicated with Deol in April 2016, on behalf of the Board, to let him know that he could either rebuild his house or maintain and landscape the lot. Bryan testified that Deol was not required to rebuild and that she had discussed this point with the Board. Had Deol elected not to rebuild, he simply needed to "maintain the property to the association's standards," including keeping the property nicely landscaped, weed free, trash free, and secured.

Bryan visited Deol's property in October 2016; the lot was overgrown and unmaintained. Deol still had not submitted rebuilding plans. At an October 18, 2016 board meeting, the Board decided to move forward with disciplinary action. More specifically, the Board voted to "have ADR, alternate dispute resolution." Bryan contacted counsel to have counsel serve a request for alternative dispute resolution on Deol. Bryan had seen an ADR document pertaining to Deol but could not recall when she saw it. However, at her deposition, Bryan confirmed she had not seen any ADR notice before the deposition and did not know whether such a notice was ever sent to Deol.

Deol had communicated to Bryan that he was encountering some problems getting his plans finalized; he also told Bryan that he was unable to give her a timeline for the reconstruction of his house. Bryan passed this information on to the Board. Deol would occasionally contact Bryan to provide an update on the status of his efforts to get the plans finalized.

Bryan had not received plans from Deol as of January 11, 2017. On January 11, 2017, the Board voted to move forward with a lawsuit. At that point, no arrangements had been made to proceed with any form of mediation. Moreover, no construction was underway.

In May 2017, Deol sent an email to Bryan indicating the plans to rebuild his house were ready and he was set to obtain approval from the architectural committee of Mayfaire's Board (the architectural committee was in fact the Board itself). Bryan

received a "very general" outline of plans from Deol in May 2017. Finally, in June 2017, she received a full set of plans. Some additional required documents were received in August 2017. On September 6, 2017, the Board approved the plans and Bryan immediately notified Deol thereof. Between September 2017 and August 2018, open framing for a two-story house was put up. The lot was still a mess, with construction debris, weeds, etc. After August 2018, Bryan was no longer the property manager for Mayfaire.

### (2) Testimony of Ravinder Kaur Rai

Ravinder Kaur Rai was the only other witness called by Mayfaire. Rai served on Mayfaire's Board from 2010 to 2019, as she "want[ed] to keep the neighborhood clean." She explained: "My number one duty I make sure that there is no graffiti in the community. And, number two, we want to make sure that the grass should be like green. It shouldn't be like burnt down. Yes, and the lights should be working properly, and the gates should also be working properly, and there shouldn't be no graffiti on the mailbox. The trees should be clean and trimmed. And also make sure that in the playground where the children play there are no broken things there. And also the trash cans in the community, trash cans should not be in the common area."

Rai testified that Deol's house burned down in March 2015 and the fire debris was cleared out in 2015. Thereafter, the condition of Deol's property deteriorated. Rai testified: "It should be like maintain the front [yard]. The lot should be cleaned and the grass should be properly maintained. At least he could do that. There shouldn't be no trash there. He could clean it up." Deol kept promising to rebuild but did not fulfill the promise in 2015. The property continued to deteriorate in 2016 as weeds grew and trash appeared. Rai testified: "There was a lot of weeds. The grass was like – even the mud, the weeds, it was like tall as I am, and because it rained quite a bit in 2016 and the grass was really grown up. And the mud was coming on to the street." Rai testified: "I sent my own gardener twice to clean his yard." Rai, a board member, was friends with Deol

5.

and, as a result, was under pressure to get something done about Deol's property. She was concerned the Board would be sued for a failure to have Deol's property in compliance with Mayfaire's requirements.

In October 2016, the Board voted to serve Deol with a request for alternative dispute resolution. At her deposition, Rai was asked whether she had seen an ADR notice with respect to Deol; Rai responded she had only seen it shortly before her deposition. When Rai was asked at deposition whether an ADR notice was ever provided to Deol, Rai had no recollection on the point.

In 2017, the Board voted to proceed with a lawsuit against Deol. After filing the lawsuit, the Board did not send further notices to Deol. In May 2017, the Board received a building application and drawings from Deol. Deol began rebuilding his house in 2017 by erecting the framing. The Board received plans for Deol's house in August 2017 and those plans were approved on September 6, 2017. Deol erected the framing but did not secure the property with a fence. Rai observed: "There was no fence. It was a very dangerous condition because kids used to go there and play. There were nails there." Other than completing the framing, Deol did not promptly continue with further construction; however, a lot of work occurred in the month before trial.

## A. Defense Case

### (1) Testimony of Simranjit Deol

Deol testified that his house burned down as a result of arson. Deol filed an insurance claim and the insurance company undertook an extensive investigation, finally paying, in December 2015, the bulk of the insurance proceeds due to Deol. In the meantime, in April 2015, Deol had begun efforts to rebuild the house, including asking Susan Bryan "to help [him] get the plans from the original builder." The plans were necessary even for purposes of getting estimates from contractors. Deol would periodically communicate with Bryan about the status of his house and lot. Also, demolition work on the property was completed early on.

The builder finally provided an initial set of plans in May 2016, whereupon Deol hired a contractor; thereafter, in June 2016, Deol got a full set of plans. The contractor put a fence around the property. In June 2016, Deol also hired a gardener to consistently care for the property. Deol advised Bryan he had hired a gardener and Bryan acknowledged as much. On August 30, 2016, Deol informed Bryan via email that his contractor had filed for a permit. Bryan emailed Deol in September 2016, stating that he was required to obtain Board approval of the plans before getting a permit from the City of Bakersfield. Deol responded that "the CC&Rs say that the plans [had] to be approved by the city before [he could submit them] to [Mayfaire] and that her request [was] not along CC&Rs." The plans were submitted to the City of Bakersfield on October 31, 2016.

In the meantime, Deol received two hearing notices from the Board, one as to "overgrown grass," and the other for not submitting his plans to the Board's architectural committee. The Board did not have a separate architectural committee. Deol did not attend the hearings, which were held on October 18, 2016; he was subsequently fined for failure to submit plans. Thereafter, Deol did not hear from Mayfaire between November 2016 and March 2017.

On March 22, 2017, Mayfaire filed the instant lawsuit again Deol; Deol was not aware of the lawsuit at the time. Deol found out about the lawsuit in September 2017. Neither Bryan nor any Board member told Deol about the lawsuit. Meanwhile, Deol's plans were approved by the City of Bakersfield on April 7, 2017, and Deol promptly informed Bryan thereof and submitted the plans to Mayfaire's Board. Bryan acknowledged receipt of the plans and requested additional documents; Deol complied with her request. Deol commenced erecting the framing for his house in June 2017. The Board eventually approved the plans for Deol's house in September 2017. Framing, roof work, and electrical work proceeded in 2017. Bryan did not alert Deol to the existence of the lawsuit, in their communications during this time.

7.

When Deol found out about the lawsuit, he contacted Bryan. He asked for the lawsuit to be withdrawn in light of the fact that he was already rebuilding. He received no response to his request. Deol went to the October 2017 Board meeting to address the Board. He testified: "I told them the facts that from day one my – you know, my intentions was [*sic*] to rebuild. I was – you guys know that I was getting the plans. You guys know that, you know, it took me a while to get the plans. You guys are aware that I had to file [with] the city – you know, I have to get the contractor, which I did. You guys know that I have to get a city permit before I start construction, which I did. So why – first of all, why [did] you file the lawsuit. And, second, my request was that you guys physically see the construction is there, [so] withdraw the lawsuit." The Board told Deol that they understood his concerns, would look into the issue, and would get back to him very shortly.

Deol did not receive any response from the Board but, after he emailed Bryan, Bryan assured him that "they will halt the proceedings of the lawsuit, but they will keep the lawsuit open until [he] finish[ed] [his] house." Deol took her at her word and did not file anything in the lawsuit. He testified as to what happened next: "They went behind my back. They didn't inform me or anything. They misguided me. Basically they misguided me and took a default on me." The default was taken on October 24, 2017. Deol had to hire counsel and file a motion to get the default set aside; Mayfaire did not agree to voluntarily set aside the default.

Deol said that construction on his house proceeded in the meantime, with a delay of three or four months when he had to switch contractors in 2018. At the time of trial, in October 2019, the house was 80 percent completed. Construction was actively proceeding and Deol fully intended to continue with the construction until his house was completed.

**B.    Site Visit by Trial Court**

The trial court offered to undertake a site visit to Deol's house. Deol's counsel stated: "I would be all for you going and looking at it." Mayfaire's counsel suggested the court could instead rely on photographs of the property. On October 9, 2019, the last day of trial (trial took place on October 7, 8, and 9, 2019), the trial court stated for the record: "I did a brief inspection of the – primarily the exterior of the involved residence yesterday from about 2:00 to 2:15. So I note that for the record."

**PROCEDURAL HISTORY**

Mayfaire filed this action on March 22, 2017. Deol was served by publication and Mayfaire obtained a default on November 20, 2017. On December 8, 2017, Deol moved to have the default set aside. On January 11, 2018, the default was set aside.

After a series of demurrers and motions to strike, Mayfaire filed, on May 8, 2018, a second amended complaint (complaint), which is the operative complaint. The operative complaint contained four causes of action: (1) breach of the declaration of covenants, conditions, and restrictions; (2) specific performance; (3) nuisance; and (4) declaratory relief. As to the first cause of action, breach of the CC&Rs, the complaint sought relief in the form of "general damages in an amount to be determined at the time of trial." As to the second cause of action, specific performance, the complaint sought an order requiring Deol to "rebuild [his] house and maintain [his] lot in accordance with the [CC&Rs]." With regard to the third cause of action, the complaint sought "a declaration of the rights, duties and obligations of the parties under the [CC&Rs], and specifically … a declaration by [the] Court that [Deol] rebuild [his] house and maintain [his] lot in accordance with the [CC&Rs]." The complaint also sought attorney's fees and costs under the CC&Rs and Civil Code section 5975 (which provides for the prevailing party, in an action to enforce CC&Rs, to recover reasonable attorney's fees and costs).

9.

Deol filed an answer generally denying all the allegations of the complaint as well as specifically claiming that Mayfaire had failed to exhaust all statutory and contractual remedies prior to filing the complaint.  (See Code Civ. Proc., § 431.30, subd. (d).)

In October 2019, the matter proceeded to a bench trial.  At trial, two witnesses testified on behalf of Mayfaire (Susan Bryan and Ravinder Rai), and Deol testified on his own behalf (see above).  The parties filed opening briefs before, and closing briefs after, the evidentiary phase of the trial; the briefs were filed in lieu of oral opening and closing arguments.

On November 15, 2019, the trial court issued a tentative ruling in favor of Mayfaire.  Deol requested a statement of decision.  Mayfaire submitted a proposed statement of decision.  Deol filed objections to the proposed statement of decision.  On January 6, 2020, the court overruled the objections and adopted the statement of decision.

In the statement of decision, the trial court noted:  "[Mayfaire] is a mutual benefit corporation subject to a Declaration of Covenants, Conditions and Restrictions (Declaration or CC&R's) recorded March 31, 2006.  The CC&R's are to be interpreted as a contract.  CC&R's are interpreted according to the usual rules for the interpretation of contracts generally, with a view toward enforcing the reasonable intent of the parties. The language of the CC&R's governs if it is clear and explicit, and the Court interprets the words in their ordinary and popular sense unless a contrary intent is shown.  The parties' intent is to be ascertained from the writing alone if possible.  (See *Harvey v. The Landing Homeowners Assn.* (2008) 162 Cal.App.4th 809, 817.)"

The court ruled that Mayfaire prevailed on the first cause of action, breach of the CC&R's, because Deol had not timely rebuilt his home after it was destroyed by fire.  As to the second cause of action, specific performance, the court noted that specific performance was a remedy and ruled as follows:  "The Court … renders a decree of specific performance that the Defendant complete the construction of the residence so that all external indicia of construction is concluded, and all publicly visible portions of

10.

the property are properly landscaped and maintained, within 90 days of the date of entry of judgment." With regard to the third cause of action, the court ruled: "The Court also finds in favor of the Plaintiff on the Third Cause of Action for Nuisance." The court added: "The Court's equitable decree of specific enforcement is a sufficient remedy for the nuisance, to be considered a decree in abatement as well." Finally, with regard to the fourth cause of action, declaratory relief, the court ruled: "[T]he Court interprets the CC&R's in Plaintiff's favor, and therefore finds in favor of Plaintiff upon the Cause of Action for Declaratory Relief."

Judgment in favor of Mayfaire was entered on January 6, 2020.

## DISCUSSION

I. **Under Applicable Statutes and Terms of CC&Rs, the Parties Were Required, Prior to Filing a Lawsuit, to Attempt to Resolve Any Dispute by Means of an Alternative Dispute Resolution Process**

The instant lawsuit was filed pursuant to Mayfaire's governing CC&Rs (the CC&Rs specified that the term "Governing Documents" used therein referred to the CC&Rs along with the articles of incorporation of the homeowners' association, association rules, association bylaws, architectural guidelines adopted by the association, and any supplementary CC&Rs recorded by the association). The CC&Rs were admitted into evidence at trial as Mayfaire's Exhibit 5.

Mayfaire's causes of action were premised on Article 12.9 of the CC&Rs. Article 12.9, entitled "Damage to Residences," provides: "Restoration of any damage to the Residential Lots shall be made by and at the individual expense of the Owner of the Residence so damaged. In the event of a determination by an Owner not to restore the Residence, the Residential Lot shall be landscaped and maintained in an attractive and well-kept condition by the Owner thereof. All such repair and restoration shall be completed as promptly as practical and in a lawful and workmanlike manner, in accordance with plans approved by the Board as provided herein." (Underline omitted.)

11.

Article 15 of the CC&Rs, entitled "Enforcement," along with the articles grouped under Article 15, were also relevant to Mayfaire's action. (Unnecessary capitalization omitted.) Article 15.2.1 is entitled "Rights of Enforcement of Governing Documents." (Underline omitted.) Article 15.2.1 provides, in pertinent part: "The Association or any Owner shall have a right of action against any Owner, and any Owner shall have a right of action against the Association, to enforce by proceedings at law or in equity, all covenants, conditions and restrictions, now or hereafter imposed by the provisions of the Governing Documents or any amendment thereto, including the right to prevent the violation of such covenants, conditions and restrictions and the right to recover damages or other dues for such violation."

Article 15.2.2 of the CC&Rs is entitled, "Procedure for Enforcement." (Underline omitted.) Article 15.2.2 provides, in pertinent part: "[I]n enforcing any action under the Governing Documents[,] unless the applicable time limitation for commencing an action would run within one hundred twenty (120) days[,] prior to the filing of a civil action by either the Association or a Member solely for declaratory relief or injunctive relief [or] in connection with a claim for injunctive relief, declaratory relief and/or monetary damages (excluding actions in Small Claims Court) … not in excess of Five Thousand Dollars ($5,000.00) … the parties shall comply with the applicable notice and delivery requirements and other provisions of the California Civil Code Section 1350 et seq. [i.e., the Davis-Stirling Common Interest Development Act, renumbered as California Civil Code Section 4000 et seq.] relating to such enforcement action."

Article 15.2.2 of Mayfaire's CC&Rs explicitly provided that any enforcement action brought under the CC&Rs must comply with the Davis-Stirling Common Interest Development Act (Davis-Stirling Act or the Act; Civ. Code, § 4000 et seq.).[2] (See

---

[2] Article 16.13 of the CC&Rs, entitled "Statutory References," provides: "All references in this Declaration to various statutes, codes, regulations, ordinances and other laws shall be deemed to include those laws in effect as of the date of this Declaration and any successor laws as may be amended from time to time."

*Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1102 [in the event of a conflict between a homeowners association's CC&Rs and the Davis-Stirling Common Interest Development Act, the Act prevails as a matter of law]; *Retzloff v. Moulton Parkway Residents' Assn., No. One* (2017) 14 Cal.App.5th 742, 748 [Davis-Stirling Act governs homeowners associations and consolidates the statutory law governing condominiums and other common interest developments]; *That v. Alders Maintenance Assn.* (2012) 206 Cal.App.4th 1419, 1425 [under Davis-Stirling Act, common interest developments are required to be managed by a homeowners association—defined as a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development—which homeowners are generally mandated to join].)

Several provisions of Articles 3 and 4 of Chapter 10 of the Davis-Stirling Act are relevant to the instant matter. Chapter 10 of the Act is entitled "Dispute Resolution and Enforcement"; Article 3 of Chapter 10 is entitled, "Alternative Dispute Resolution Prerequisite to Civil Action"; and Article 4 of Chapter 10 is entitled "Civil Action." More specifically, sections 5925, 5930, 5935, 5950 of Article 3 and section 5975 of Article 4, of Chapter 10 of the Act, are implicated here.[3]

Section 5975 of Article 4 ("Civil Action") provides for the filing of actions to enforce CC&Rs in the courts. Section 5975 states: "The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both." (§ 5975, subd. (a).) Section 5975 also provides for enforcement of a governing document other than the declaration by both the association and an owner. (§ 5975, subd. (b).) Finally, section 5975 states that "[i]n an

---

**3**        Undesignated statutory references are to the Civil Code.

13.

action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (§ 5975, subd. (c).)

Sections 5925, 5930, 5935, and 5950 of Article 3 ("Alternative Dispute Resolution Prerequisite to Civil Action") relate to alternative dispute resolution as a required prerequisite for bringing an enforcement action, such as the present one, in the superior court. Section 5925 defines pertinent terms such as "[a]lternative dispute resolution" and "[e]nforcement action." Section 5930 provides that "[a]n association or a member may not file an enforcement action in the superior court unless the parties have endeavored to submit their dispute to alternative dispute resolution pursuant to this article." (§ 5930, subd. (a).) Section 5930 further provides that "[t]his section applies only to an enforcement action that is solely for declaratory, injunctive, or writ relief, or for that relief in conjunction with a claim for monetary damages not in excess of the jurisdictional limits [for small claims matters] [as] stated in Sections 116.220 and 116.221 of the Code of Civil Procedure." (§ 5930, subd. (b).)

Section 5935 provides that "[a]ny party to a dispute may initiate the process required by Section 5930 by serving on all other parties to the dispute a Request for Resolution." (§ 5935, subd. (a).) Section 5935 further provides that the Request for Resolution "shall include" (1) a brief description of the dispute between the parties; (2) a request for alternative dispute resolution; (3) a notice that the party receiving the Request for Resolution is required to respond within 30 days of receipt or the request will be deemed rejected; (4) if the party on whom the request is served is the member, a copy of this article. (§ 5935, subd. (a)(1), (2), (3), (4).) Section 5935 clarifies that "[s]ervice of the Request for Resolution shall be by personal delivery, first-class mail, express mail, facsimile transmission, or other means reasonably calculated to provide the party on whom the request is served actual notice of the request." (§ 5935, subd. (b).) Finally, section 5935 provides that "[a] party on whom a Request for Resolution is served has 30 days following service to accept or reject the request. If a party does not accept the

14.

request within that period, the request is deemed rejected by the party." (§ 5935, subd. (c).)

Section 5950 addresses pleading requirements for enforcement actions such as the instant one. Section 5950 requires "the party commencing the action" to "file with the initial pleading a certificate stating that one or more of the following conditions are satisfied: [¶] (1) Alternative dispute resolution has been completed in compliance with this article. [¶] (2) One of the other parties to the dispute did not accept the terms offered for alternative dispute resolution. [¶] (3) Preliminary or temporary injunctive relief is necessary." (§ 5950, subd. (a)(1), (2), (3).) Section 5950 further provides: "Failure to file a certificate pursuant to subdivision (a) is grounds for a demurrer or a motion to strike unless the court finds that dismissal of the action for failure to comply with this article would result in substantial prejudice to one of the parties." (§ 5959, subd. (b).)

Deol argues that the ADR requirement addressed in sections 5930 and 5935, and incorporated in Article 15.2.2 of the CC&Rs, is a required prerequisite for bringing an enforcement action in the superior court under the circumstances at issue here, but Mayfaire failed to establish compliance with this requirement at trial. Deol argues Mayfaire's failure to do so precludes Mayfaire from prevailing in the instant action and the trial court erroneously ruled in favor of Mayfaire on all claims in its complaint. We agree with Deol and reverse the judgment.

### A. Background

Mayfaire's second amended complaint, filed on May 8, 2018, contained the following factual allegation: "On November 4, 2016, a Request for Alternative Dispute Resolution was served on Defendants pursuant to Civil Code Section[s] 5975 and 5925 et al. A true and correct copy is attached hereto as Exhibit 'B' and incorporated by reference herein. Defendants did not respond to the Request for Alternative Dispute Resolution." There were no allegations regarding the alleged method of service. Exhibit

15.

B was a document entitled, "Request for Alternative Dispute Resolution," and was attached to the second amended complaint.

The "Request for Alternative Dispute Resolution" attached to the complaint, stated: "Mayfaire Homeowners Association … requests that Simranjit Deol (Owner) submit [the herein defined] dispute to mediation as a form of alternative dispute resolution." (Unnecessary capitalization omitted.) The document defined the dispute at issue as follows: "[The] Association has sent multiple letters to Owner and called him to multiple hearings regarding his property that burned down over two years ago [in March 2015] [and] which was located within the Association. Since Owner's house burned down he has not done anything to maintain his lot which is in violation of the Declaration of Covenants, Conditions, and Restrictions (CC&Rs). This is interfering with Owner's neighbors' quiet use and enjoyment of their lots. After multiple notifications by the Association to the Owner, nothing has been done to mitigate this issue." (Unnecessary capitalization omitted.) The document further stated: "Please take notice that Owner is required to respond, by accepting or rejecting this Request for Alternative Dispute Resolution within thirty (30) days of service of this Request, or Owner will be deemed to have rejected this Request under Civil Code Section 5935(c)." A copy of Article 3 of Chapter 10 of the Davis-Stirling Act was included in Exhibit B.

Deol's answer to the second amended complaint included a general denial of all allegations in the complaint and specifically claimed that Mayfaire had failed to exhaust statutory and contractual remedies set forth in the CC&Rs. Deol also addressed the complaint's allegations pertaining to the requisite ADR notice in his opening brief (which served as his opening statement at trial). Deol's opening brief asserted that Mayfaire was not entitled to any relief under any cause of action because it had failed to comply with the prerequisites to filing its lawsuit specified in the Davis-Stirling Act, which prerequisites were also incorporated into the governing CC&Rs. Deol's opening brief stated: "The most glaring failure is the lack of compliance with Civil Code section 5930.

Under Section 5930, an association may not file an enforcement action in the superior court unless the parties have endeavored to submit their dispute to alternative dispute resolution. ([Article 15.2.2. of the CC&Rs].) Here, the evidence will confirm that plaintiff failed to comply with this pre-lawsuit requirement." The opening brief concluded: "Given the failures that will be established in this matter, plaintiff is not entitled to any judgment against Mr. Deol."

Similarly, Deol's closing brief (which served as his closing argument at trial) addressed the lack of any evidence of Mayfaire's compliance with the requirements of sections 5930 and 5935, and Article 15.2.2 of the CC&Rs. The closing brief contended, "Plaintiff is not entitled to any relief under any of cause of action because of its failure to comply with the CC&Rs and the Civil Code." (Unnecessary capitalization omitted.) More specifically, the closing brief stated: "Judgment must be rendered in favor of Simran Deol on all causes of action because plaintiff failed to comply with the statutory pre-requisites to enforcing its CC&R's." The closing brief noted, "plaintiff failed to provide any evidence that it complied with Civil Code sections 5900 et seq. prior to filing this action." (Unnecessary capitalization omitted.) The closing brief added: "Plaintiff failed to admit evidence showing that it satisfied these requirements as they pertain to Mr. Deol. This failure is fatal to plaintiff's claims. This is because performance by the plaintiff of its contractual obligations is a specific element of each cause of action and a statutory requirement to state and maintain a valid claim."

Deol's closing brief specifically noted that Mayfaire had "failed to comply with Civil Code section 5930," under which "an association is barred from filing a legal action unless it has sought to submit the matter to alternate dispute resolution." Deol argued in the brief: "There was no evidence admitted in this matter to show that plaintiff attempted to submit any of the disputes in this legal action with Mr. Deol to alternative dispute resolution as required by the CC&Rs and Section 5930." Deol further argued in the brief: "Also lacking from the evidence was proof that plaintiff complied with Civil Code

17.

section 5935. This Section required plaintiff to serve a written request for dispute resolution that: 1) described the dispute; 2) set the time to respond; 3) offered dispute resolution; and 4) provided a copy of the Civil Code provisions governing the process. This required notice had to be served by personal delivery, first-class mail, express mail, facsimile transmission, or other means reasonably calculated to provide Mr. Deol with notice to be valid. (Civ. Code, § 5935.) There was no evidence admitted to prove: 1) that such a notice exists; 2) that it addressed the two issues raised in the second amended complaint [that is, proper maintenance of Deol's lot *and* reconstruction of Deol's house]; 3) that such a notice was ever served on Mr. Deol [in accordance with section 5935,] prior to filing this action."

In sum, Deol contended, in his closing brief, that Mayfaire had failed to adduce evidence to show compliance *both* with the relevant Civil Code provisions as well as the CCR&R's themselves, as the CC&Rs incorporated all the provisions of the Davis-Stirling Act and specifically section 5930. The closing brief noted: "Under section 15.2.2 of the CC&Rs, plaintiff's compliance with these sections was a mandatory pre-requisite to enforcing the CC&Rs. Plaintiff's failure to produce evidence of its compliance with these statutes is a failure of proof that requires judgment to be rendered in favor of Mr. Deol on all causes of action." The closing brief further noted: "Plaintiff cannot simply ignore the procedures of the CC&Rs to file and maintain the present court action, especially when plaintiff is required to prove that it has complied with its own rules as a pre-requisite to maintaining this action. (*Ironwood Owners Assn. IX v. Solomon* (1986) 178 Cal.App.3d 766, 772.)" ¶

In its statement of decision, the trial court addressed Deol's arguments with respect to Civil Code sections 5930 and 5935; the court however did not address Deol's argument that Mayfaire had also failed to adduce evidence to show compliance with Article 15.2.2 of the CC&Rs themselves. The trial court stated:

18.

"Defendant now argues that Plaintiff has failed in its burden of proof to demonstrate compliance with the dispute resolution requirements of the Civil Code.… [Specifically] argu[ing] that Plaintiff has not proven that Plaintiff complied with the alternative dispute resolution prerequisites to a civil action under Civil Code sections 5930 and 5935. [¶] … [¶]

"As to the prerequisites of sections 5930 and 5935, Defendant correctly states that Plaintiff did not admit evidence of compliance with the notice provisions of section 5935 (which implements the process required by section 5930). In Plaintiff's closing brief, Plaintiff refers to Exhibit 1 and its attachments. Exhibit 1 was not admitted. Exhibit 4, which is a copy of the section 5935 notice that Plaintiff argues was served on Defendant, was never admitted.

"The Court notes that it may be an abuse of discretion in a Court trial not to allow counsel upon motion to reopen to establish the foundation to admit evidence that the section 5935 notice was served upon the Defendant. Nevertheless, re-opening the matter appears unnecessary, because the Court considers the issue to be resolved upon burden of proof. Under Evidence Code section 500, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting.

"Here, statutory notice is not an essential element of Plaintiff's claims. While the notice is considered a prerequisite for a civil action, Civil Code Section 5950 only requires that a certificate of compliance be filed by the party commencing the action.

"Plaintiff attached its Request for Alternative Dispute Resolution to the initial pleading and amended complaint. Paragraph 15 of the complaint states, 'On November 4, 2016, a Request for Alternative Dispute Resolution was served on Defendants pursuant to Civil Code Section 5975 and 5925 et al. A true and correct copy is attached hereto as Exhibit "B" and incorporated by reference herein. Defendants did not respond to the Request for Alternative Dispute Resolution.'

"If Defendant disputed service of the Request for Alternative Dispute Resolution, Civil Code Section 5950(b) provides the remedy available, which is filing a demurrer or motion to strike. Defendant filed two demurrers and two motions to strike and did not raise any issue concerning service of the Request for Alternative Dispute Resolution.

"The Court finds that the alleged failure of such notice is in the nature of an affirmative defense, and the Court deems that it is the Defendant's burden to prove a lack of notice. Here the Defendant did not

19.

plead lack of notice as an affirmative defense. Defendant waived any claim concerning this procedural issue by not raising it in Defendant's demurrers, motions to strike or answer."

Mayfaire did not make a motion to reopen its evidence in the trial court at any point; it did not do so even after Deol raised the issue of the lack of admission of any evidence to show compliance with sections 5930 and 5935 as well as Article 15.2.2 of the CC&Rs.

### B. Analysis

#### (1) Compliance with Statutory ADR Notice Requirements Must be Pleaded and Proved by Plaintiff

Preliminarily, we note this action was effectively an action for injunctive and declaratory relief alone, thereby triggering the application of sections 5930, 5935, and 5950. Mayfaire stipulated during the discovery phase that it was not seeking monetary damages on behalf of the Mayfaire residential community, and Ravinder Rai confirmed at deposition that while Mayfaire sought attorney's fees and costs, it was not seeking compensatory damages. Accordingly, Mayfaire did not disclose damages witnesses in discovery, nor did it adduce at trial any expert or lay testimony on the issue of monetary damages.[4] Rather, Mayfaire sought specific performance of certain provisions of the CC&Rs through an injunction and declaratory relief as to relevant provisions of the CC&Rs. Mayfaire also indicated it would seek attorney's fees and costs under section 5975, a provision of the Davis-Stirling Act, that allows for the award of attorney's fees and costs to the prevailing party in a case brought under the Act.[5] The second amended complaint indicated in its caption that the "amount owing" was "over $10,000.00." This

---

[4]    The trial court granted an in limine motion brought by Deol to exclude the testimony of witnesses not disclosed in discovery. Mayfaire did not supplement the record on appeal with its opening and closing briefs (the briefs served as its opening and closing arguments). We therefore cannot address the contents of its opening and closing briefs.

[5]    The judgment issued by the trial court notes, "The right to attorney's fees shall be determined by noticed motion."

20.

notation appears to pertain to attorney's fees. As for damages, the complaint noted, in its body, that any applicable "general damages" would "be determined at the time of trial." As noted above, however, damages were not contemplated or sought, either pre-trial or at trial, in this matter. On this record, the applicability of sections 5930, 5935, and 5950 to this matter is clear.

As mentioned, under sections 5930 and 5935, an enforcement action under the Davis-Stirling Act cannot be filed in the superior court unless "the parties have endeavored to submit their dispute to alternative dispute resolution," with the process being initiated when a party to the dispute serves the other party, by a means reasonably calculated to provide actual notice, a request for resolution that includes a description of the dispute and a request for alternative dispute resolution with respect to the dispute, among other information. Furthermore, section 5950 establishes a pleading requirement in these cases to the effect that the complaint initiating the case must include a certificate stating that "[a]lternative dispute resolution has been completed in compliance with this article," "[o]ne of the other parties to the dispute does not accept the terms offered for alternative dispute resolution," or "[p]reliminary or temporary injunctive relief is necessary." Indeed, under section 5950, failure to do so can result in dismissal of the case. (See § 5950, subd. (b).) It follows that, the ADR notice requirements set forth in sections 5930 and 5935 apply to all actions described in section 5930, that is, actions for injunctive and declaratory relief and/or monetary damages within specified limits, *unless preliminary or temporary injunctive relief is requested*. Preliminary or temporary injunctive relief was not at issue in the instant matter, which was squarely within the purview of sections 5930, 5935, and 5950.

Furthermore, the fact that a complaint can be dismissed for failure to comply with section 5950 indicates that allegations potentially establishing compliance with sections 5930 and 5935, when these statutes apply, are substantive, material allegations that must be pleaded and proved by the plaintiff. (See Code Civ. Proc., § 431.10 [a material

21.

allegation in a pleading is one that is essential in that it cannot be stricken from the pleading without leaving it insufficient as to the claim therein]; see also Evid. Code, § 500 ["Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."].)  Accordingly, we conclude the trial court erred in ruling that it was the defendant's burden to assert and prove as an affirmative defense, a lack of the notice required under these statutes.[6]

"An affirmative defense is *new matter* that defendants are required to plead and prove." (*Marich v. MGM/UA Telecommunications, Inc*. (2003) 113 Cal.App.4th 415, 425, italics added; see Code Civ. Proc., § 431.30, subd. (b)(1) & (b)(2).)  Here, Mayfaire's complaint included a document purporting to be an ADR notice that, according to the allegations in the complaint, had been served on Deol and to which Deol had not responded.  Deol's answer denied these allegations by means of a general denial and claimed that Mayfaire had failed to exhaust applicable statutory and contractual remedies.  In so doing, Deol's answer did not raise "new matter" that could properly be characterized as an affirmative defense.  (See *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 383 (*Nakashima*) ["Defendants' general denial put in issue the material allegations of the complaint.  (Code Civ. Proc., § 431.30, subd. (d).)"]; *Bevill v. Zoura* (1994) 27 Cal.App.4th 694, 698 ["Generally, a party must raise an issue as an affirmative defense where the matter is not responsive to essential allegations of the complaint  [Citations.]  Thus, where a defendant relies on facts not put in issue by the plaintiff, the defendant must plead such facts as an affirmative defense.  [Citation.]

---

**6**    Courts will occasionally shift the burden of proof when the evidence is peculiarly within the control of the party without the burden.  (See, e.g., *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 35-36; *Sanchez v. Unemployment Ins. Appeals Bd*. (1977) 20 Cal.3d 55, 70-71.)  In this case, however, whether an adequate ADR notice was timely prepared and properly served on Deol was peculiarly within Mayfaire's control, so this exception does not apply.

'Where, however, the answer sets forth facts showing some essential allegation of the complaint is not true, such facts are not "new matter," but only a traverse.' "].)

" 'If the answer, either directly or by necessary implication, admits the truth of all the essential allegations of the complaint which show a cause of action, but sets forth facts from which it results that, notwithstanding the truth of the allegations of the complaint, no cause of action existed in the plaintiff at the time the action was brought, those facts are new matter.  But if those facts only show that some essential allegation of the complaint is not true, then such facts are not new matter, but only a traverse.' " (*Cahill Bros., Inc. v. Clementina Co*. (1962) 208 Cal.App.2d 367, 385-386 (*Cahill*), overruled on other grounds by *Bay Development Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1029-1030, fn. 10; *Nakashima*, *supra*, 231 Cal.App.3d at p. 383.)  All this to say that the ADR notice requirements in sections 1530 and 1535, taken together with section 5950, refer to requisite material allegations that must be included in the complaint, not an affirmative defense.

Indeed, here, it was the complaint that affirmatively presented the issue of plaintiff's compliance with the ADR notice requirements of sections 5930, 5935, and 5950 and the answer merely denied the allegations of the complaint.  The burden to plead and prove the issue properly falls on the plaintiff, with the defendant required to produce evidence sufficient to offset the effect of the plaintiff's showing, not to offset it by a preponderance of the evidence.  (See *Cahill*, *supra*, 208 Cal.App.2d at p. 386.)

The requirements imposed by sections 5930, 5935, and 5950 may properly be analogized to the prerequisite for bringing an action pursuant to the Fair Employment and Housing Act (FEHA) in the superior court.  Before an employee can bring an action in court pursuant to FEHA's employment provisions, the employee must obtain a right-to-sue letter from the Department of Fair Employment and Housing (DFEH).  (*Kim v. Konad USA Distribution, Inc.* (2014) 226 Cal.App.4th 1336, 1345 (*Kim*) [" 'Before filing a civil action alleging FEHA violations, an employee must exhaust his or her

23.

administrative remedies with DFEH. [Citation.] Exhaustion includes the timely filing of administrative complaints addressing the claims and parties at issue, as well as the procurement of right-to-sue letters."].) This prerequisite – that is the procurement of a right-to-sue letter from DFEH – must be pleaded and proved by the plaintiff. (*Kim*, *supra* at pp. 1345-1346 [plaintiffs bear the burden of pleading and proving timely filing of a sufficient complaint with the DFEH and obtaining a right-to-sue letter].) In other words, plaintiffs bear the burden to show compliance with the exhaustion requirement or that noncompliance was excused for some reason. (See *Grant v. Comp USA, Inc*. (2003) 109 Cal.App.4th 637, 650 [plaintiff's lack of right-to-sue letter excused after DFEH failed to issue letter within one year of filing complaint]; *Holland v. Union Pacific Railroad Co*. (2007) 154 Cal.App.4th 940, 945, 947 [DFEH misled plaintiff regarding timeliness of filing].) Failure to do so is grounds for dismissal pursuant to, inter alia, demurrer or other pre-trial or trial motion, but the defect is waivable. (*Kim*, *supra*, 226 Cal.App.4th at pp. 1347-1348; Cf. *Westinghouse Elec. Corp. v. County of Los Angeles* (1974) 42 Cal.App.3d 32, 37 [exhaustion of remedies part of plaintiff taxpayer's case-in-chief in assessment action].)

> (2) <u>Mayfaire Did Not Prove It Complied With Statutory ADR Notice Requirements</u>

Here, Mayfaire included the requisite allegations in its complaint and attached a document purporting to be an ADR request served on Deol prior to trial, thereby satisfying applicable pleading requirements (factual allegations in a complaint are taken as true for purposes of a demurrer or motion to strike). The complaint was therefore not defective on its face, and, given that the allegations were material and factual determinations were at issue, a demurrer or motion to strike under section 5950 was not warranted. (See *Ramsden v. Western Union* (1977) 71 Cal.App.3d 873, 879 [demurrer]; *Mitchell v. Atwell Island Water Dist*. (2020) 45 Cal.App.5th 624, 628 [motion to strike].) Demurrers are feasible when there is a failure to include the requisite allegations in and

24.

attachments to the complaint. That was not the case here and Deol properly did not challenge the ADR notice issue on demurrer. Mayfaire has not cited any case where a demurrer was deemed the proper vehicle for raising the issue of a failure to comply with applicable prerequisites and pleading requirements when the complaint, on its face, contained the required allegations and attachments.

If the complaint is facially proper, then the matter is properly addressed in a motion for summary judgment, motion for nonsuit or directed verdict, or other motion. Alternatively, where the issue is addressed at trial, it may also properly be directed to the trier of fact, normally the trial court, to resolve upon submission of the case. In the instant situation, Deol flagged the failure-to-comply or failure-to-exhaust issue in his answer, opening brief, closing brief, and objections to the proposed statement of decision. We conclude Deol did not waive the issue.

Deol argued in his opening statement that Mayfaire had failed to comply with applicable prerequisites for filing a lawsuit pursuant to the Davis-Stirling Act and was therefore not entitled to any relief. Mayfaire did not adduce evidence at trial to prove the material allegations regarding these prerequisites set forth in its complaint. Mayfaire did not admit into evidence the ADR request (which, it bears mention, was not accompanied by any proof of service) and there was no witness for Deol to cross-examine with respect to the ADR request and potential service thereof on Deol. The deposition testimony of Susan Bryan and Ravinder Rai was admitted into evidence. Bryan confirmed she had never seen a request for ADR document before the deposition and did not know whether such a request had ever been sent to Deol. As for Ravinder Rai, she testified at deposition that she had only seen the ADR notice shortly before her deposition and had no recollection whether an ADR notice was ever served on Deol.

In sum, neither Bryan nor Rai said anything regarding whether the ADR request was served on Deol, and whether it was served by a means that was reasonably calculated to give Deol actual notice thereof. Indeed, Bryan testified that general Association

25.

notices were simply sent to Deol's burned out and nonexistent residence within the Mayfaire community. To the extent the ADR request was sent to Deol's prior address within Mayfaire, that would *not* appear to constitute service by a means reasonably calculated to give Deol actual notice thereof, as Deol obviously did not live at that address and the request required a prompt response (within 30 days).[7] Furthermore, Mayfaire's counsel did not establish facts to prove the relevant allegations of the complaint through cross-examination of Deol. The evidence on the issue at trial was minimal and insufficient to prove the relevant allegations and establish Mayfaire's compliance with sections 5930 and 5935.

Accordingly, Deol argued in his closing brief that "plaintiff failed to provide any evidence that it complied with Civil Code sections 5900 et seq. prior to filing this action." He also challenged the scope of the ADR notice attached to the complaint on grounds it encompassed only a dispute over Deol's failure "to maintain his yard" and not a dispute over Deol's failure to rebuild his house. After Deol filed his closing brief, Mayfaire did not move to reopen its case to present evidence relevant to the issue. Had Mayfaire done so, the trial court surely would have granted the motion, as noted in its statement of decision. In addition, the court can excuse compliance with Article 3 of the Davis-Stirling Act on grounds that dismissal of the action would result in substantial prejudice to one of the parties. Once again, Mayfaire did not request this remedy and make the relevant showing in the trial court (nor can we discern reasons pursuant to which Mayfaire would be excused from complying with the applicable prerequisites) and has waived it for purposes of appeal. (§ 5950.)

---

[7] Deol testified he would collect mail from his Mayfaire property and had not changed his mailing address with Mayfaire. However, he also testified he traveled from time to time, including to Michigan, where his wife and children lived. The record further indicated that Susan Bryan was in regular contact with Deol by email and phone.

### (3)    Reversal is Required

Here, the trial court specifically found:  "As to the prerequisites of sections 5930 and 5935, Defendant correctly states that Plaintiff did not admit evidence of compliance with the notice provisions of section 5935 (which implements the process required by section 5930)."  The court expressly noted that it "resolved" the issue "upon the burden the proof."  The court explained:  "The Court finds that the alleged failure of such notice is in the nature of an affirmative defense, and the Court deems that it is the Defendant's burden to prove a lack of notice."  The court found that Deol had not shown that Mayfaire failed to serve him with an ADR request prior to commencing the instant lawsuit.  The court observed that while Deol had generally testified that he did not receive any notices from Mayfaire from November 2016 to March 2017, the evidence showed that Deol was "frequently out of town for long periods," thereby undermining his credibility on this point.  The court concluded:  "[Deol's] testimony is not sufficient to meet his burden that the notice was not served."  The court further concluded:  "[Deol] waived any claim concerning this procedural issue by not raising it in [his] demurrers, motions to strike or answer."

First, as noted above, Deol did not waive the issue of Mayfaire's failure to exhaust statutory remedies by failing to raise it by demurrer as a demurrer was not warranted; moreover, Deol raised the issue in his answer, his opening brief, and his closing brief.  Next, as previously discussed, the allegations showing compliance with sections 5930, 5935, and 5950 are substantive, material allegations that the plaintiff is required to plead and prove when applicable, as required by Evidence Code section 500 and Code of Civil Procedure section 431.10.  Accordingly, given the court's factual finding that Mayfaire had not adduced sufficient evidence of its compliance with the relevant prerequisites, the court's findings in favor of Mayfaire on all claims in the second amended complaint and subsequent entry of judgment in favor of Mayfaire must be reversed.

27.

Finally, here the requirements of section 5930 were incorporated into the CC&Rs themselves, specifically in Article 15.2.2 of the CC&Rs. Deol argues that Mayfaire was required to abide by the terms of the CC&Rs before it could obtain relief in the form of specific performance via an injunction. As explained in *Ironwood Owners Assn. IX v. Solomon*, *supra*, 178 Cal.App.3d at p. 772, "When a homeowners' association seeks to enforce the provisions of its CCRs to compel an act by one of its member owners, it is incumbent upon it to show that it has followed its own standards and procedures prior to pursuing such a remedy." However, in light of our conclusion that reversal of the judgment is warranted for the failure of proof at trial of Mayfaire's compliance with the ADR notice provisions of the Davis-Stirling Act, we need not address this argument. Similarly, we need not address Deol's remaining arguments.

## DISPOSITION

The judgment is reversed. Appellant to recover his costs on appeal.


SMITH, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.

28.